```
                                              SEND
                                              ENTER
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

```
                                    )        O
LARRY FONTENOT,                     )   No. CV 05-7394-RC
                                    )
        Plaintiff,                  )
                                    )   OPINION AND ORDER
    v.                              )
                                    )
MICHAEL J. ASTRUE,[1]               )
Commissioner of Social Security,    )
                                    )
        Defendant.                  )
_____)
```

Plaintiff Larry Fontenot filed a complaint on October 17, 2005, seeking review of the Commissioner's decision denying his applications for disability benefits. The Commissioner answered the complaint on March 27, 2006, and the parties filed a joint stipulation on July 20, 2006.

**BACKGROUND**

**I**

On March 24, 2003 (protective filing date), plaintiff applied for disability benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423, and the Supplemental Security Income program

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Commissioner of the Social Security Administration, is substituted as the defendant.

of Title XVI of the Act, 42 U.S.C. § 1382(a), claiming an inability to work since January 31, 2003, due to headaches, dizziness, memory loss and knee pain. Certified Administrative Record ("A.R.") 58-61, 81, 326-28. The plaintiff's applications were denied on July 18, 2003. A.R. 51-54. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Frederick L. Liggett on May 17, 2004.[2] A.R. 32-49, 55. On December 14, 2004, Administrative Law Judge Joseph F. De Pietro ("the ALJ") issued a decision finding plaintiff is not disabled. A.R. 15-26. The plaintiff appealed this decision to the Appeals Council, which denied review on August 25, 2005. A.R. 5-14.

**II**

The plaintiff, who was born on March 13, 1960, is currently 47 years old. A.R. 70. The plaintiff has an eleventh-grade education, and has previously worked as a maintenance worker, a parking attendant, a security guard, an usher, a warehouseman and a mover. A.R. 47-48, 70-77.

On January 31, 2003, plaintiff was struck by a drunk driver while he was riding his bicycle; he was thrown approximately 30 feet, landing on a concrete curb. A.R. 36, 152, 159, 174. The plaintiff was not wearing a helmet. A.R. 159, 175. He was taken to Cedars Sinai Medical Center, where he was initially examined by Scott Brewster, M.D., who diagnosed him with an unspecified head injury, blunt trauma, a distal right rib fracture, a pelvic fracture, and a

---

[2] Judge Liggett passed away after the administrative hearing. A.R. 18.

2

possible thoracic fracture.  A.R. 137-38, 270-71, 317-18.
Subsequently, Scott R. Karlan, M.D., examined plaintiff and diagnosed him with facial contusions, a cerebral contusion, pulmonary contusions, a left superior pubic ramus fracture, and a probable renal contusion.  A.R. 140-44, 152-53, 174-77, 248-50.  A brain CT-scan was normal, A.R. 166, 253, but showed a right frontal contusion.  A.R. 151, 158, 175, 269.  A cervical spine CT-scan showed fractures of the right cervical rib and right first rib, A.R. 167, 254, and a thoracic spine CT-scan showed a right first rib fracture, mild degenerative changes, and dependent atelectasis[3] or consolidation in the lungs.  A.R. 173, 255.  A chest CT-scan showed a small hiatal hernia, atelectasis in the dependent portions of the lungs, a fracture of the posterior portion of the left third rib, fractures of the posterior aspects of the left fifth, ninth and tenth ribs, and a small amount of fluid in the anterior mediastinum adjacent to the ascending and transverse aorta.  A.R. 139, 172, 256.  A pelvic CT-scan showed fractures of the superior and inferior pubic rami on the left.  Id.  Chest x-rays revealed mild cardiomegaly[4] and scoliosis.  A.R. 154, 161, 265.  Cervical spine x-rays revealed rudimentary cervical ribs and mild scoliosis,[5] A.R. 163, 267-68; thoracic spine x-rays showed a

---

[3] Atelectasis is an "incomplete expansion of a lung or a portion of a lung; it may be a primary (congenital), secondary, or otherwise acquired condition."  Dorland's Illustrated Medical Dictionary, 166 (29th ed. 2000).

[4] Cardiomegaly is "hypertrophy [the enlargement of overgrowth of an organ or part due to an increase in size of its constituent cells] of the heart."  Dorland's Illustrated Medical Dictionary at 287, 859.

[5] Scoliosis is "an appreciable lateral deviation in the normally straight vertical line of the spine[,]" which can be

1  potential abnormality at T7-T8, A.R. 175; and lumbar spine x-rays
2  were normal, A.R. 162, 266.  Pelvic x-rays showed a left superior
3  pubic ramus fracture.  A.R. 164, 251.  Right lower leg x-rays revealed
4  a distal tibial fracture.  A.R. 165, 252.

    On February 1, 2003, Brian Solberg, M.D., examined plaintiff and
recommended open reduction and internal fixation of plaintiff's right
tibial fracture using an intramedullary device.  A.R. 123-26, 257-58.
Dr. Solberg noted plaintiff was at risk for deep venous thrombosis and
recommended prophylactic treatment following tibial surgery.  A.R.
124, 126.  A repeat chest CT-scan revealed a small amount of fluid in
the anterior mediastinum adjacent to the tranverse and ascending aorta
with mild induration of the surrounding fat, atelectasis in the
dependent portion of the lungs, a right third rib fracture and right
posterior ninth and tenth rib fractures.  A.R. 115, 120, 263.  The
next day plaintiff underwent open reduction and internal fixation
surgery on his right tibial fracture, with the insertion of an
intermedullary device.  A.R. 101-04, 107-08, 110, 246-47, 319-20.
Postoperative right leg x-rays revealed all bones in good position and
alignment, A.R. 105, 113, 261, and plaintiff was discharged from the
hospital on February 7, 2003.  A.R. 92.

    On February 18, 2003, Matthew G. Richard, M.D., examined
plaintiff, noted he was able to walk with a walker, and referred him
to the orthopedic clinic.  A.R. 88-89, 259-60.  Right leg x-rays taken

---

either to the left (levoscoliosis) or to the right
(dextroscoliosis).  Dorland's Illustrated Medical Dictionary at
488, 987, 1612.

4

April 23, 2003, showed interval healing, but with the fracture lines still visible. A.R. 87. On June 24, 2003, Dennis P. Franco, M.D., who assisted on plaintiff's surgery, noted plaintiff needed a cane for ambulation and could only walk a few steps without it. A.R. 86. Dr. Franco also noted plaintiff's response to treatment had been favorable and his prognosis was good; however, plaintiff needed "follow up to determine if fracture healing is occurring or is complete." Id.

On September 9, 2003, Munir M. Uwaydah, M.D., an orthopedic surgeon, examined plaintiff and noted plaintiff was experiencing side effects with Vicodin, including dizziness, which made his symptoms worse. A.R. 185. Dr. Uwaydah placed plaintiff on a course of physical therapy and prescribed medication. A.R. 184-88. On October 6, 2003, plaintiff underwent a right knee MRI, which showed tiny oblique tears of the posterior horns of both menisci, a sprain of the fibular collateral ligament, slight joint effusion, thickening of the inferior aspect of the patellar tendon, and a signal void artifact in the proximal tibia. A.R. 191-92. A right ankle MRI taken the same day showed a signal void artifact in the distal tibia, mild ankle joint effusion, and mild reactive changes in the distal tibia and the calcaneus, without evidence of gross fracture or avascular necrosis. A.R. 193-94. On October 21, 2003, Dr. Uwaydah reexamined plaintiff and recommended right knee arthroscopic surgery, and prescribed medication. A.R. 189, 196.

On July 28, 2004, H. Harlan Bleecker, M.D., an orthopedic surgeon, examined plaintiff, noted he requires the use of a cane for ambulation, and diagnosed him with, among other things, internal

1  derangement of the right knee.  A.R. 322-25.  Dr. Bleecker opined
2  plaintiff can occasionally lift 25 pounds and frequently lift 10
3  pounds, can sit for six out of eight hours, and can walk two to four
4  out of eight hours with normal periods of rest, but cannot kneel,
5  squat or climb.  A.R. 325.

7      On May 2, 2005, plaintiff underwent a right knee MRI, which
8  showed a questionable very small obliquely oriented linear tear of the
9  inferior surface of the posterior horn of the lateral meniscus,
10 thickening of the patellar tendon that may be due to tendinosis or
11 post-surgical change, a low-signal intensity region within the
12 proximal tibia that has the appearance of a surgically-created tibial
13 tunnel, the mid-portion of the anterior cruciate ligament is thickened
14 compatible with an intrasubstance tear of indeterminate age, and no
15 evidence of a recent or remote osteochondral lesion.  A.R. 334-35.

17     Lumbar spine x-rays taken May 26, 2005, showed some limitation of
18 flexion and extension consistent with lumbar muscle spasm.  A.R. 336.

## DISCUSSION

### III

22     The Court, pursuant to 42 U.S.C. § 405(g), has the authority to
23 review the Commissioner's decision denying plaintiff disability
24 benefits to determine if his findings are supported by substantial
25 evidence and whether the Commissioner used the proper legal standards
26 in reaching his decision.  Widmark v. Barnhart, 454 F.3d 1063, 1066
27 (9th Cir. 2006); Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050,
28 1052 (9th Cir. 2006).

The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case.  20 C.F.R. §§ 404.1520, 416.920.  In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in

1  the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).

3     Applying the five-step sequential evaluation process, the ALJ
4  found plaintiff has not engaged in substantial gainful activity since
5  the alleged onset of disability.  (Step One).  The ALJ then found
6  plaintiff is "status post right distal tibia and fibula fracture with
7  open reduction and intermedullary nailing and he has been diagnosed
8  with internal derangement and medial tears of the right knee[,]" which
9  "are considered 'severe'" (Step Two); however, he does not have an
10 impairment or combination of impairments that meets or equals a
11 Listing.  (Step Three).  The ALJ next determined plaintiff is unable
12 to perform his past relevant work.  (Step Four).  Finally, the ALJ
13 concluded plaintiff can perform a significant number of jobs in the
14 national economy; therefore, he is not disabled.  (Step Five).

**IV**

17    "The Commissioner has acknowledged certain impairments to be so
18 severe as to preclude substantial gainful activity.  These impairments
19 are set out in the Listing of Impairments, 20 C.F.R. Part 404, Subpt.
20 P, App. 1.  A claimant whose impairments or combination of impairments
21 meets or equals the 'Listings' is presumptively disabled."
22 Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1298 n.2
23 (9th Cir. 1999); Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).
24 However, the mere diagnosis of an impairment set out in a Listing does
25 not mean the claimant meets the Listing; rather, the claimant "must
26 also have the findings shown in the Listing of that impairment."  20
27 C.F.R. § 416.925(d); Young v. Sullivan, 911 F.2d 180, 184 (9th Cir.
28 1990).  In other words, "[t]o meet a listed impairment, a claimant

must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).

"To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." Id. (citation omitted); 20 C.F.R. §§ 404.1526, 416.926. "A finding of equivalence must be based on medical evidence only." Lewis, 236 F.3d at 514; Tackett, 180 F.3d at 1100. "'In determining whether a claimant equals a listing under step three . . . , the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments.'" Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003) (quoting Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990)). However, "[i]t is unnecessary to require the [ALJ] . . . to state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990).

The plaintiff contends the ALJ erred in Step Three when he failed to properly consider, or develop the evidence regarding, whether plaintiff meets or equals the requirements of Listing 1.06. Listing 1.06 provides:

> *Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones*. With: [¶] A. Solid union not evident on

9

>     appropriate medically acceptable imaging and not clinically
>     solid; [¶] **and** [¶] B. Inability to ambulate effectively, as
>     defined in 1.00B2b,[6] and return to effective ambulation
>     did not occur or is not expected to occur within 12 months
>     of onset.

20 C.F.R. § 404, Subpart P, App. 1, Listing 1.06 (footnote and emphasis added).

---

[6]  Listing 1.00B2b provides:

> [An i]nability to ambulate effectively means an extreme limitation of the ability to walk, i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . . [¶] *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. § 404, Subpart P, App. 1, Listing 1.00b (emphasis in original).

10

1    In making the Step Three determination, the ALJ found, as
2 follows:

3
4       The Court has reviewed the evidence and concludes the
5       [plaintiff's] impairments, both singly and in combination,
6       do not meet or equal the severity of any listing.
7       Specifically, the record documents the [plaintiff's] tibia
8       and fibula fracture **healed within twelve months and there is**
9       **no evidence of an inability to ambulate effectively**.
10      Further, there is no evidence of gross anatomical deformity
11      of the knee with x-ray evidence of significant joint space
12      narrowing to meet the criteria of listing 1.02.[7]

13
14 A.R. 20 (citation omitted; footnote and emphasis added).  Although the
15 ALJ did not cite Listing 1.06 by number, he clearly addressed the
16 requirements of Listing 1.06, noting plaintiff's tibia and fibula
17 fractures had healed and there was no evidence plaintiff is unable to
18 ambulate effectively.  A.R. 20.  Therefore, plaintiff's contention
19 that the ALJ failed to consider Listing 1.06 is without merit.
20
21    However, "'[i]n Social Security cases, the ALJ has a special duty
22 to fully and fairly develop the record and to assure that the
23 claimant's interests are considered.'"  Smolen, 80 F.3d at 1288

---

[7] Listing 1.02 addresses major dysfunction of a joint due to any cause, see 20 C.F.R. § 404, Subpart P, App. 1, Listing 1.02, which the ALJ considered because of the plaintiff's right knee condition.  The plaintiff does not challenge the ALJ's conclusion that he does not meet or equal the requirements of Listing 1.02.

11

1  (citation omitted); Widmark, 454 F.3d at 1068.  This duty exists
2  regardless of whether the claimant is represented by counsel.  Celaya,
3  332 F.3d at 1183; Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir.
4  2001).  "Ambiguous evidence, or the ALJ's own finding that the record
5  is inadequate to allow for proper evaluation of the evidence, triggers
6  the ALJ's duty to 'conduct an appropriate inquiry.'"  Tonapetyan, 242
7  F.3d at 1150 (citations omitted); Webb v. Barnhart, 433 F.3d 683, 687
8  (9th Cir. 2005).

10  Here, the evidence was ambiguous as to whether, and to what
11 extent, plaintiff's right lower leg fracture had healed.  Although x-
12 rays taken April 23, 2003, showed internal healing, fracture lines
13 were still visible.  A.R. 87.  Moreover, as recently as June 20, 2003,
14 Dr. Franco, one of plaintiff's treating physicians, opined he needed
15 "to determine if fracture healing is occurring or is complete."  A.R.
16 86.  Additionally, in July 2004, Dr. Bleecker was unable to offer an
17 opinion on the healing of plaintiff's right distal tibia and fibula
18 fractures since his requests to perform right knee and right distal
19 tibia x-rays were denied.  A.R. 324-25.  Under these circumstances,
20 the record should have been further developed to ascertain whether
21 plaintiff's right lower leg fracture was evident on "medically
22 acceptable imaging" within the meaning of Listing 1.06.[8]
23 //

---

[8] The Commissioner contends that any such failure to develop the record was essentially harmless since plaintiff cannot meet Part B of Listing 1.06, which requires an inability to ambulate effectively.  However, that is not clear, and since this matter must otherwise be remanded as discussed in Part V below, the Court does not address this issue, but leaves it for the ALJ to consider on remand.

12

V

A claimant's residual functional capacity ("RFC") is what he can still do despite his physical, mental, nonexertional, and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). Here, in making the Step Five determination, the ALJ found:

> [plaintiff] has the [RFC] to lift and carry fifteen pounds occasionally and ten pounds frequently. He can stand and walk for two hours in an eight-hour day and sit for six hours in an eight-hour day. The [plaintiff] is also precluded from kneeling, squatting and climbing and he must utilize a cane for ambulation.

A.R. 25. The plaintiff, however, contends the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly concluded plaintiff is not credible. The plaintiff is correct.

The plaintiff testified at the administrative hearing that, following being hit by a car, he had right leg surgery in which a rod was inserted between his knee and ankle. A.R. 36-37. The plaintiff also testified that his doctors have recommended two more surgeries, one to remove the hardware in his lower right leg and the other to repair a torn meniscus in his knee, but he does not have any health insurance and is unable to afford more surgery. A.R. 37-38, 44-45. The plaintiff stated he experiences sharp, throbbing pain in his right leg, averaging between 7 and 8 on a scale of 1-10, and he needs a lot of rest. A.R. 39, 48. Further, plaintiff testified he can only lift

about 10 or 15 pounds, he can only stand for 15-20 minutes before having to take a break and sit down and prop up his leg, he can only walk for about 15-25 minutes or for about half a block with a cane before needing to rest, and he can only sit for less than 30 minutes before his leg cramps and he needs to switch positions. A.R. 39-42, 46-47. The plaintiff also stated he has some concentration problems because of his pain and he is sometimes distracted during conversations. A.R. 41.

Once a claimant has presented objective evidence he suffers from an impairment that could cause pain or other nonexertional limitations,[9] the ALJ may not discredit the claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). Thus, if the ALJ finds the claimant's subjective complaints are not credible, he "'must provide specific, cogent reasons for the disbelief.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (citations omitted); Moisa, 367 F.3d at 885. Furthermore, if there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595,

---

[9] "While most cases discuss excess pain testimony rather than excess symptom testimony, rules developed to assure proper consideration of excess pain apply equally to other medically related symptoms." Swenson v. Sullivan, 876 F.2d 683, 687-88 (9th Cir. 1989).

14

599 (9th Cir. 1999); Greger, 464 F.3d at 972.

The ALJ found plaintiff is not totally credible because he is only taking Motrin for pain relief and "if the [plaintiff] were experiencing severe levels of pain he would require stronger pain medication or seek emergent medical treatment." A.R. 23. However, this finding is not supported by substantial evidence. First, plaintiff testified he was prescribed Vicodin,[10] but was unable to take it because it made him dizzy, and the medical records supports plaintiff's testimony. See A.R. 46, 185; S.S.R. 96-7p, 1996 WL 374186, *1, *5 (S.S.A.) (consistency of claimant's own statements is strong indication of credibility, especially those complaints made to treating or examining medical sources).[11] Second, the ALJ failed to recognize that Motrin comes in both prescription and non-prescription strength, see, e.g., The PDR Family Guide to Prescription Drugs at 428 ("Motrin is a nonsteroidal anti-inflammatory drug available in both prescription and nonprescription forms. Prescription Motrin is used in adults for . . . relief of mild to moderate pain."), and the record

---

[10] Vicodin is used "for the relief of moderate to moderately severe pain." The PDR Family Guide to Prescription Drugs, 723 (8th ed. 2000). Dizziness is a common side effect of Vicodin. Id.

[11] Social Security Rulings constitute the Social Security Administration's interpretations of the statute it administers and of its own regulations. Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996); Quang Van Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989). Although Social Security Rulings do not have the force of law, Chavez, 103 F.3d at 851, once published, they are binding upon ALJs and the Commissioner. Holohan v. Massanari, 246 F.3d 1195, 1202-03 n.1 (9th Cir. 2001); Gatliff v. Comm'r of the Soc. Sec. Admin., 172 F.3d 690, 692 n.2 (9th Cir. 1999).

does not show plaintiff is taking the non-prescription strength. Third, plaintiff testified he is taking Tylenol no. 3, A.R. 46, 48, which is a prescription strength pain reliever containing Codeine.[12] Therefore, this finding is not supported by substantial evidence and does not provide a basis for the ALJ's adverse credibility determination.

The ALJ also found plaintiff is not completely credible because "[t]here [i]s no evidence of atrophy in the [plaintiff's] lower extremities, which is a common finding in individuals with chronic pain[; t]hus, it can be inferred, the [plaintiff] has not altered the use of his muscles to result in muscle atrophy." A.R. 23. This finding also is not supported by substantial evidence. First, contrary to the ALJ's statement, there **is** evidence of muscle atrophy. On September 9, 2003, when Dr. Uwaydah measured plaintiff's thighs and calves, the measurements were: 18-3/4" (47.6 cm.) right thigh; 18-1/4" (46.4 cm.) left thigh; 14" both calves (35.6 cm.). A.R. 186. However, on July 28, 2004, when Dr. Bleecker made these same measurements, the measurements were: 37 cm. right thigh; 38 cm. left thigh; 35 cm. both calves. A.R. 324. Thus, not only had the circumference of plaintiff's legs decreased postoperatively, but the thigh of the injured right leg, which Dr. Uwaydah measured as larger than the thigh of plaintiff's left leg, was subsequently found by Dr.

---

[12] "Tylenol with Codeine, a narcotic analgesic, is used to treat mild to moderately severe pain. It contains two drugs – acetaminophen and codeine. Acetaminophen, an antipyretic (fever-reducing) analgesic, is used to reduce pain and fever. Codeine, a narcotic analgesic, is used to treat pain that is moderate to severe." The PDR Family Guide to Prescription Drugs at 705.

16

Bleecker to be smaller than the thigh of plaintiff's left leg. Second, even had plaintiff not shown atrophy, the ALJ's finding of lack of atrophy provides no basis for rejecting plaintiff's pain testimony. See Miller v. Sullivan, 953 F.2d 417, 422-23 (8th Cir. 1992) ("[A]lthough muscle deterioration may result from disuse, disabling pain does not always result in muscle disuse. Therefore, the ALJ cannot discount [claimant's] claim simply because she does not show an effect that other people suffering from disabling pain may show.").

The ALJ also attacked plaintiff's credibility by citing his ability to drive, stating: "While the [plaintiff] testified that pain affects his ability to concentrate, the [plaintiff] testified he retains the ability to drive several times a day, which is an activity requiring some ability to concentrate." A.R. 23. However, this finding is inaccurate. Although plaintiff testified his pain sometimes distracts him while he is in conversation with others, A.R. 41, 43, this is not necessarily inconsistent with an ability to drive.[13] A.R. 43; see Powell v. Chater, 959 F. Supp. 1238, 1245 (C.D. Cal. 1997) (minimal perceived inconsistencies are insufficient to discredit claimant's testimony); Cloutier v. Apfel, 70 F. Supp. 2d 271, 278 (W.D. N.Y. 1999) (ALJ failed to provide sufficient basis for rejecting claimant's subjective complaints based, in part, on "ALJ's failure to try to resolve any alleged inconsistencies").

---

[13] The plaintiff does not have his own car, and he testified he borrows his girlfriend's car to drive her to work and his daughter to school. A.R. 43. However, the record does not show how far, or for how long, plaintiff drives on these trips.

17

1      Finally, the ALJ determined plaintiff is not completely credible
2 because "he retains the ability to perform most daily activities,
3 including shopping, errands, daily short walks and socializing with
4 family and friends."  A.R. 23.  In making this finding, the ALJ relied
5 on a "Pain Questionnaire" plaintiff completed, in which plaintiff
6 stated his daily activities consist of "daily walks through the house
7 to kind of losen [sic] up" his leg, errands such as going to the Post
8 Office without assistance, socializing with friends and family members
9 and "a little shopping," but he needs help at the grocery store
10 because he cannot lift heavy items.  A.R. 79-80.  Moreover, plaintiff
11 also testified that, apart from driving his girlfriend to work and his
12 daughter to school, he spends the remainder of his day lying down and
13 watching TV or sitting on the porch with his leg elevated.  A.R. 43.

15      "With respect to daily activities, . . . if a claimant 'is able
16 to spend a *substantial part* of [his] day engaged in pursuits involving
17 the performance of physical functions that are transferable to a work
18 setting, a specific finding as to this fact may be sufficient to
19 discredit a claimant's allegations.'"  Vertigan v. Halter, 260 F.3d
20 1044, 1049 (9th Cir. 2001) (quoting Morgan, 169 F.3d at 600); emphasis
21 in original).  However, "many home activities are not easily
22 transferable to what may be the more grueling environment of the
23 workplace, where it might be impossible to periodically rest or take
24 medication[,]" Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989), and
25 "the mere fact that a plaintiff has carried on certain daily
26 activities, such as grocery shopping, driving a car, or limited
27 walking for exercise, does not in any way detract from [his]
28 credibility as to [his] overall disability.  One does not need to be

18

1  'utterly incapacitated' in order to be disabled." Vertigan, 260 F.3d
2  at 1050; see also Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987)
3  ("[E]vidence that [plaintiff] could assist with some household chores
4  was not determinative of disability. 'Disability does not mean that a
5  claimant must vegetate in a dark room excluded from all forms of human
6  and social activity.'" (citation omitted)). Therefore, the ALJ's
7  finding regarding plaintiff's daily activities also does not support
8  the ALJ's adverse credibility determination.

10     For all these reasons, "the ALJ provided unsatisfactory reasons
11  for discounting [plaintiff's] credibility, and . . . his findings were
12  unsupported by substantial evidence based on the record as a whole."
13  Reddick v. Chater, 157 F.3d 715, 724 (9th Cir. 1998).

**VI**

16     When the Commissioner's decision is not supported by substantial
17  evidence, the Court has authority to affirm, modify, or reverse the
18  Commissioner's decision "with or without remanding the cause for
19  rehearing." 42 U.S.C. § 405(g); McCartey v. Massanari, 298 F.3d 1072,
20  1076 (9th Cir. 2002). "Remand for further administrative proceedings
21  is appropriate if enhancement of the record would be useful." Benecke
22  v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). Since there are
23  "insufficient findings as to whether [plaintiff's] testimony should be
24  credited as true," remand is the appropriate remedy. Connett v.
25  Barnhart, 340 F.3d 871, 876 (9th Cir. 2003); Bunnell v. Barnhart, 336
26  F.3d 1112, 1116 (9th Cir. 2003). Furthermore, this matter should be
27  remanded so the ALJ can properly develop the record regarding whether
28  //

1 | plaintiff meets or equals the requirements of Listing 1.06, as
2 | discussed above in Part IV.

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is granted; and (2) the Commissioner's decision is reversed, and the action is remanded to the Social Security Administration for further proceedings consistent with this Opinion and Order, pursuant to sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered accordingly.

DATE:   March 20, 2007            /s/ Rosalyn M. Chapman
                                  ROSALYN M. CHAPMAN
                                  UNITED STATES MAGISTRATE JUDGE

R&R-MDO\05-7394.MDO
3/20/07